UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAZAKI NORTH AMERICA, INC.,

    Plaintiff,

v.

TAIZO KANEKO and KANEKO
CONSULTING COMPANY,

    Defendants.
                                                 /

Case No. 2:16-cv-12941

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [223]**

On March 29, 2019, Plaintiff Yazaki North America, Inc. ("Yazaki") filed a motion for default judgment and involuntary dismissal against Defendants Taizo Kaneko ("Taizo") and Kaneko Consulting Company ("KCC") (collectively "Kaneko Defendants"). ECF 223. The Kaneko Defendants did not respond. The Court has reviewed the motion and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant Plaintiff's motion for default judgment and involuntary dismissal.

**BACKGROUND**

On August 12, 2016, Yazaki filed its complaint against multiple defendants—including the Kaneko Defendants—for alleged civil violations of the Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"). ECF 1. On February 7, 2017, Kaneko Defendants filed an amended answer and counterclaims against Yazaki. ECF 130. On April 19, 2017, the Court entered a stipulated preliminary

1

injunction freezing certain assets of Kaneko Defendants and requiring an accounting. ECF 135.

On August 28, 2017, the Court referred the parties to mediation with a private mediator. ECF 139. The parties mediated on December 19 and 20, 2017. *See* ECF 150, PgID 2753. At the mediation, Yazaki and Kaneko Defendants "made progress towards a resolution," "exchanged settlement offers," and advised that further mediation "would be beneficial." ECF 151, PgID 2759. The Court granted multiple extensions of time for the parties to mediate until May 31, 2018. *See* ECF 153, 168, 170.

Then, on August 8, 2018, Kaneko Defendants filed an emergency motion to modify the stipulated preliminary injunction. ECF 175. On October 29, 2018, the Court denied the motion without prejudice. ECF 204.

The next day, counsel for Kaneko Defendants ("Counsel") filed a motion to withdraw. ECF 205. The Court denied the motion for several reasons: (1) KCC is a corporation and could proceed only through counsel; (2) Taizo "demonstrated an unwillingness to litigate in the case in a timely manner;" and (3) the Court had recently ordered the parties to meet and confer about the stipulated preliminary injunction. ECF 209, PgID 3218. The Court expressed particular concern that, without local counsel, "Taizo may . . . ignore Court orders and thwart the effective and just administration of the case." *Id.*

On December 20, 2018, pursuant to the Court's order, Yazaki notified the Court that it had been unable to meet and confer with Kaneko Defendants because they had stopped responding to Counsel. ECF 213, PgID 3245–46.

In early January 2019, the Court ordered Kaneko Defendants to show cause why default should not be entered against them. ECF 215. The Court noted that Yazaki's belief that "Kaneko Defendants' unresponsiveness justified a default against them" was "likely correct." *Id.* at 3258. But, out of an abundance of caution, the Court provided Kaneko Defendants another opportunity to litigate the case.

The Court further required Counsel to certify that they provided a copy of the order via email to Kaneko Defendants. *Id.* at 3259. Counsel certified that they transmitted the order to Kaneko Defendants, ECF 216, and then responded to the show cause order on Kaneko Defendants behalf, ECF 217. The Court then conducted a status conference with the parties to discuss next steps.

On February 20, 2019, the Court granted Counsel a withdrawal conditioned on Kaneko Defendants filing a notice of appearance. ECF 219. The Court notified Kaneko Defendants that it would construe "a failure to respond as a concession that Kaneko Defendants do not intend to defend the case." *Id.* at 3275; *see also id.* at 3276. Counsel certified that they served the order on Kaneko Defendants. ECF 220. But Kaneko Defendants did not act or file a notice of appearance. On March 18, 2019, two weeks after the deadline for Kaneko Defendants to file an appearance, the Court permitted Counsel's complete withdrawal, recounted Kaneko Defendants' failure to defend the case, and required Yazaki to show cause why the case should not be

3

dismissed for failure to prosecute. ECF 221. Yazaki's motion for default judgment followed.

## STANDARD OF REVIEW

The Court may sanction a party that "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Permissible sanctions include "dismissing the action or proceeding in whole or in part" or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi); *see also* Fed. R. Civ. P. 16(f)(1) (referencing the permissibility of sanctions authorized by Civil Rule 37). The Civil Rules permit the Court to dismiss claims if "the plaintiff fails to prosecute or comply with [the Civil Rules] or a court order." Fed. R. Civ. P. 41(b). The Court's inherent powers allow it "to protect the due and orderly administration of justice and maintain the authority and dignity of the court" by dismissing a claim as a sanction against a defendant that ignores court orders. *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (quotation omitted).

Whether dismissing a claim or rendering default judgment under Rules 16 and 37, Rule 41, or its inherent powers, the Court applies the same analysis. *Id.* at 241 (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)). The key of the Court's analysis is "a failure to prosecute." *Id.* To determine whether dismissal is an appropriate sanction, the Court considers:

> (1) Whether the party's failure is due to willfulness, bad faith or fault;
> (2) Whether the adversary was prejudiced by the dismissed party's conduct;
> (3) Whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

4

(4) Whether less drastic sanctions were imposed or considered before dismissal of the action.

*Id.* at 242. The same analysis applies to entering default judgment as a sanction. *See Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (discussing both dismissal and default judgment before listing factors in the Court's analysis). No factor is dispositive. *Bowles*, 129 F. App'x at 242 (citing *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001)).

After the Court determines that it should enter default judgment, it must determine the amount and character of the recovery awarded. *10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2688 (4th ed. 2017) (collecting cases). The court must "conduct an inquiry" to "ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quotation marks omitted). The Court may conduct hearings or make referrals to determine the amount of damages necessary to enter or effectuate judgment. Fed. R. Civ. P. 55(b)(2).

## DISCUSSION

I. <u>Whether a Sanction is Appropriate</u>

Here, a sanction is appropriate. First, Kaneko Defendants' failure to prosecute is knowing and intentional. The Court previously detailed Kaneko Defendants' unresponsive conduct. *See* ECF 215, 219. Counsel notified Kaneko Defendants of the Court's orders and advised the Court that Kaneko Defendants ignored their communications. *See, e.g.,* ECF 213, PgID 3252; ECF 217, PgID 3265. Further, Counsel explained that the Court would treat Kaneko Defendants' failure to comply

with the Court's order "as a concession that the Kaneko Defendants no longer intend to defend against Plaintiff's claims." ECF 220, PgID 3278.

Second, Kaneko Defendants' avoidance of the litigation prejudices Yazaki. Yazaki is unable to pursue its claims against Kaneko Defendants and continues to expend resources to maintain its case. Moreover, denying Yazaki's motion would result in prejudice to it. Ordinarily, if a party fails to prosecute a case, the Court orders the plaintiff to show cause why the case should not be dismissed for failure to prosecute. At that point, the plaintiff seeks default and default judgment. Here, if the Court were to deny Yazaki's motion for default judgment, the Court's only alternative would be to dismiss Kaneko Defendants without prejudice. Yazaki could refile a complaint against Kaneko Defendants, but, given their conduct over the past year, Kaneko Defendants would be unlikely to respond to the new complaint. Moreover, dismissal of Kaneko Defendants would effectively reward it for ignoring the litigation. The Civil Rules' provisions for dismissal, default, and default judgment do not contemplate this outcome.

Third, the Court repeatedly warned Kaneko Defendants that failure to respond to its orders would be construed as a default. *See, e.g.,* ECF 215 (noting that Yazaki is likely correct that Kaneko Defendants' conduct justified a default against them but providing Kaneko Defendants a final opportunity to litigate the case); ECF 219, PgID 3275 ("Kaneko Defendants must . . . provide notice of their intention to defend the action. The Court will construe a failure to respond as a concession that Kaneko Defendants do not intend to defend the case. The failure may result in an entry of

6

judgment against them."). Counsel also warned Kaneko Defendants that failure to comply could result in default and judgment against them. ECF 220, PgID 3278.

Finally, although the Court has not imposed lesser sanctions, a sanction less than dismissal or default judgment would be ineffective. For example, staying the case until Kaneko Defendants comply with the Court's orders would reward their misconduct and simply ignore a case that is not being litigated. *See* Fed. R. Civ. P. 37(b)(2)(A)(iv) (listing a stay as a potential sanction). Given the Court's previous admonitions, applying a lesser sanction would signal to Kaneko Defendants that the Court will tolerate continued misconduct.

All four factors therefore weigh in favor of dismissal and default judgment. *See Bowles*, 129 F. App'x at 242. The Court will thus dismiss Kaneko Defendants' counterclaims and enter default judgment against them and in Yazaki's favor.

II. Damages Award

The Court must determine the appropriate damages award. Before addressing the amount, however, the Court will briefly summarize the relevant allegations in the case.

Yazaki alleges that Taizo, as manager of KCC, "participated in the creation, setup, and management" of sham vendors to defraud Yazaki. ECF 1, PgID 20, 28. Yazaki maintains that Defendants "each prepared fraudulent invoices and submitted them to Yazaki." *Id.* at 28. Further, according to Yazaki, Defendants "coordinated their activities for the purpose of promoting a scheme to defraud Yazaki, a scheme that they carried out for more than 6 years[.]" *Id.* at 22. The scheme resulted in

7

payment of "unnecessary and artificially marked-up invoices." *Id.* at 46. Yazaki's civil RICO counts sought $9 million in damages. *See id.* at 39–41.

At least one other defendant acknowledged the existence of the scheme. *See* ECF 126, PgID 2449 (Defendant Miyuki Hosono admitting that Defendant Mr. Ueda "arranged for Yazaki to purchase goods manufactured by certain Japanese 'Source Suppliers' through North American vendors (the Sham Vendors) and that these Sham Vendors marked up the prices charged to them by the Japanese Source Suppliers when the Sham Vendors sold the goods to Yazaki"). And another defendant submitted an affidavit stating that "Mr. Kaneko would wire money to [affiant's Chase Bank] account for [Defendant] Mr. Ueda." ECF 223-2, PgID 3327. As for KCC, its separate business identity was established to perpetuate the scheme and was merely an "also known as" for Taizo. *See* ECF 217, PgID 3269 ("KCC is just a d/b/a for Defendant Taizo Kaneko . . . accordingly the only "real" defendant remaining in this case is Taizo Kaenko.").

Yazaki alleged that Defendants engaged in an "enterprise" for the purposes of defrauding it. 18 U.S.C. § 1961(4) (Civil RICO defining "enterprise"). Further, Yazaki alleged that Defendants engaged in "racketeering activity" by committing mail fraud and wire fraud in furtherance of the scheme. 18 U.S.C. § 1961(1) (Civil RICO defining "racketeering activity" and including mail fraud and wire fraud under 18 U.S.C. §§ 1341, 1343, respectively, as sufficient acts); *see also* ECF 1, PgID 9–17. The scheme injured Yazaki's "business or property," which entitles it to "recover threefold the

8

damages" it sustains "and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

   A. *The Damages Amount.*

The Court "may conduct hearings" to "determine the amount of damages." Fed. R. Civ. P. 55(b)(2). A district court may, however, rely on a sworn declaration "to provide the necessary evidentiary basis for calculating" a damages award. *Vesligaj*, 331 F. App'x at 355. Yazaki submitted the sworn declaration of Plante Moran's Michelle McHale-Adams and Eric Conforti (collectively "Plante Moran") in support of its requested damages. *See* ECF 224, PgID 3343–44 (under seal). Plante Moran provided "forensic investigative services" and analyzed "the losses incurred by Yazaki" when Defendant "Mr. Ueda induced it to pay the inflated and/or fictitious invoices submitted by Defendants Taizo Kaneko and Kaneko Consulting Company." *Id.* at 3339 (under seal). Plante Moran detailed the documents it considered, summarized the losses incurred by Yazaki, and explained its calculation of the damages. *See generally* ECF 224 (under seal). Plante Moran calculated Yazaki's incurred losses arising from Kaneko Defendants' involvement as "between $2,015,453 and $2,023,990." *Id.* at 3341 (under seal). Thus, Yazaki provided a sufficient evidentiary basis from which the Court can calculate damages. Yazaki seeks damages at the lower end of the range, $2,015,453. ECF 223, PgID 3308.

Yazaki also seeks treble damages under Civil RICO. Kaneko Defendants defaulted on the claims against them, including Yazaki's RICO claims. Yazaki is therefore entitled to treble damages which raises its damages award to $6,046,359.00.

9

*B. Prejudgment Interest.*

Yazaki also seeks prejudgment interest. In federal question cases, the award of post-complaint prejudgment interest is within the Court's discretion. *E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984) (citing *Bricklayers Pension Tr. Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982)). An award of prejudgment interest is not mandatory, but the Court may grant interest if a defendant unduly delayed Plaintiff's recovery. *See Thomas v. Khrawesh*, No. 2:17-cv-10026, 2017 WL 5494234, at *2 (E.D. Mich. Nov. 16, 2017), *aff'd* 738 F. App'x 870 (6th Cir. 2018).

The Court considers four factors to determine whether an interest award is warranted. *Loesel v. City of Frankenmuth*, 743 F. Supp. 2d 619, 648–49 (E.D. Mich. 2010), *rev'd on other grounds*, 692 F.3d 452 (6th Cir. 2012). Prejudgment interest is "ordinarily . . . granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Laborers' Pension Tr. Fund-Detroit & Vicinity v. Family Cement Co.*, 677 F. Supp. 896, 898 (E.D. Mich. 1987) (quoting *Stroh Container Corp. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)).

28 U.S.C. § 1961(a) defines the interest rate for post-judgment interest. But not prejudgment interest. *See Wooster*, 727 F.2d at 579 ("[T]he matter of prejudgment interest remains essentially one for the discretion of the trial judge. . . . [W]e do not think that [district courts] are invariably compelled to adopt the statutory postjudgment rate in determining prejudgment interest.").

10

Here, the Court finds that the need to fully compensate Yazaki and the balance of fairness and equity warrant the award of post-complaint prejudgment interest. The Court will award prejudgment interest at the rate identified by Michigan law.[1]

Michigan law provides that "[i]nterest is allowed on a money judgment recovered in a civil action." Mich. Comp. Laws § 600.6013(1). Interest is calculated at "at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes" as certified by the state treasurer. Mich. Comp. Laws § 600.6013(8).

Yazaki asks the Court to award prejudgment interest of $471,099.16 plus $637.44 per day from March 29, 2019 until the date judgment is entered. ECF 223, PgID 3290, 3308. Kaneko Defendants' dilatory and evasive conduct unduly delayed execution of the case. According to the method identified by Mich. Comp. Laws § 600.6013(8), Yazaki earned $471,099.16 in prejudgment interest. It is also entitled to $637.44 per day from March 29, 2019 until the Court enters judgment. *See* ECF 223, PgID 3310; *see also* ECF 210, PgID 3234 (providing the rate of interest for the six-month periods from July 2016 until December 2018). The Court will enter a separate judgment with the full judgment amount.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for default judgment [223] is **GRANTED**.

---

[1] The Court previously exercised its discretion and awarded prejudgment interest at the rate defined by Michigan law. *See* ECF 211.

11

**IT IS FURTHER ORDERED** that the Court will **ENTER** default judgment against Defendants Taizo Kaneko and Kaneko Consulting Company.

**IT IS FURTHER ORDERED** that Defendants Taizo Kaneko and Kaneko Consulting Company's counterclaims against Yazaki are **DISMISSED**.

This is a final order and closes the case.

**SO ORDERED**.

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: April 22, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 22, 2019, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager